# THE LE ROY & WESTERN RAILWAY COMPANY v. J. L. CRUM.

1. ALLEGED ERRORS, *Not Errors.* Certain alleged errors considered, and *held,* not errors.

2. ERROR, *Alleged — No Reference to Evidence — Practice.* Where the plaintiff in error makes a point that the trial court erred in refusing to submit to the jury for their consideration certain questions, but does not refer in his brief or elsewhere to any evidence in the case that would render such questions proper to be submitted to the jury, the supreme court may overrule the point for that reason alone.

3. ———— *No Error.* But *held,* in this particular case, that the trial court did not err in its refusal.

*Error from Sumner District Court.*

APPEAL by *Crum* from the report of commissioners appointed to condemn and appropriate certain lands for a right-of-way for the *Le Roy & Western Railway Company.* Judgment for the plaintiff for $2,133 damages, at the November term, 1886. The company brings the case here. The facts appear in the opinion.

*W. P. Hackney,* for plaintiff in error.

*Haughey & McBride,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an appeal to the district court of Sumner county by J. L. Crum, from the report of commissioners appointed by the judge of such court in certain condemnation proceedings instituted by the Le Roy & Western Railway Company, to have certain lands condemned and appraised for a right-of-way for such railway company. It appears that the railway is located across the plaintiff Crum's land, and that the commissioners awarded to him something over $700 as damages. The case was tried before the district court and a jury, and by such court and jury the plaintiff was awarded $2,133 as damages; and from this award the railway company as plaintiff in error, brings the case to this court.

In this court, the plaintiff in error, defendant below, makes the following points:

1. It is claimed that the court below erred in permitting certain farmers residing in the vicinity of the plaintiff's land to testify that they knew the market value of such land, and what such market value was. No error was committed in this respect. (*L. & W. Rly. Co. v. Hawk,* just decided.)

2. These farmer witnesses testified concerning the market value of the land immediately before the railway was constructed, and immediately afterward, showing a depreciation in the value of the land in the mean time. It is now claimed in this court, and for the first time, that this evidence is valueless for the reason that it was not shown by any direct evidence that the construction of the railway caused this depreciation in the market value of the land. This point is too fine. Indeed it is too unsubstantial to merit further consideration.

3. It is further claimed that the court below erred in giving a certain instruction to the jury which assumed that there was a difference in the value of the land before and after the taking of the right-of-way. Under the facts of this case there was no error in the instruction; and besides, no exception was taken to it.

4. It is also claimed that the court below erred in refusing to submit to the jury, under § 286 of the civil code as amended by chapter 91 of the Laws of 1874, certain "particular questions of fact" for their consideration. These "particular questions of fact" are as follows:

"5. How much was the damage to the plaintiff's farm from the want of a crossing from the north to the south side of said railroad?

"6. How much was the damage to the farm by reason of the necessity of crossing stock from one side to the other?

"7. How much was the damage to the farm by reason of the water in the ditches, thereby causing the adjacent land belonging to the plaintiff to cave in?

"8. How much to the farm by reason of the scaring of the stock by the company's cars?

"9. How much damage by reason of the grade of the road-

bed being above the natural level of the remainder of the land, and in what does such damage consist?

"10. How much damage to the land by reason of the inconvenience for farming, and using and occupying such land, caused by the building of said railway through, over, and across said land?

"11. What are the several elements or sources of the damages which make up the aggregate to the answer to special question No. 10, and how much of the said aggregate is made up by each of said elements or sources of damage?"

The court, however, did submit certain questions to the jury, which questions, with the answers of the jury and the general verdict of the jury, are as follows:

"1. What was the market value of 9 and $\frac{21}{100}$ acres of land taken by the defendant for a right-of-way through plaintiff's real estate, without reference at all to the damage to the land? $570.

"2. In addition to the value of the land taken, what was the amount of the real and actual damage to the remainder of the farm by reason of the taking of the 9 and $\frac{21}{100}$ acres by the defendant for its right-of-way for said railroad? $1,563.

"3. How much was the damage to that part of the farm north of the right-of-way? $800.

"4. How much was the damage to that part of the farm south of the right-of-way? $763."

"VERDICT.—We, the jury impaneled and sworn in the above-entitled case, do upon our oaths find for the plaintiff, and assess the amount of his damages at $2,133."

All the special questions — those given as well as those refused — were requested to be submitted to the jury by the railway company. With reference to those refused, no evidence has been referred to in the briefs of counsel which would render them proper to be given in the case; and here we might say that for this reason and this alone, this fourth point of the plaintiff in error should be overruled. Such point should also be overruled for still other reasons. There was no evidence tending to show any specific amount of damages arising from the want of a crossing over the railway track, or from any inconvenience in crossing such track, or from any water in the ditches, or from the scaring of stock, or from the grade

of the road-bed being above the natural level.   There was no evidence showing that any water at all stood in the ditches; and the court instructed the jury that they could not give any damages for the scaring of stock.   Question number 10 was virtually answered by the jury in their general verdict, and in their answers to such of the special questions as were submitted to them.   Besides, question number 10 is not a "particular question of fact," as contemplated by § 286 of the civil code.   It is a general question.   And question number 11 is not a proper question. (*L. & W. Rly. Co. v. Hawk,* just decided.)   The plaintiff proved that he owned 240 acres of valuable land in one body; that it extended three-fourths of a mile in length east and west; that the railroad was located diagonally from the east end to the west end through it, and through the improved portion thereof; that the track was laid upon an embankment from three to five feet above the general level; that the ground on each side of the track was correspondingly excavated; and that there was some inconvenience in crossing the track; but it was not shown that any water stood in the ditches; and *no particular amount of damages* was testified to by any witness because of the embankment, or because of the excavations, or because of the inconvenience in crossing the track.   The damages were generally proved by showing the difference in the value of the land immediately before the railroad was constructed, and immediately afterward.   As to elements of damages, however, the plaintiff testified, among other things, as follows:

"Q. What are the elements of damage which you claim to this place?   [No answer.]

"Q. Give me the first item of damage that you think of that you have suffered by reason of this road.   A. It is the cutting of the land in two, and separating it.

"Q. What is the next?   A. It takes that much of the land through there where the right-of-way is.

"Q. What is the next?   A. It damaged the wheat crop and the oats crop.

"Q. What next?   A. It damages it to cross it, to drive my stock across it, or to drive my team across it, or to cross it myself.

"Q. What else? A. I think that that covers all of the damage that I can think of."

Neither this nor any of the other evidence gave specific amounts with respect to the various elements of damage. And taking the entire evidence as it was introduced on the trial, we do not think that it was sufficiently specific to require the court to submit to the jury the special questions which were requested by the railway company and refused by the court. Under a different state of facts or of the evidence, a trial court might be required to submit some of such questions or similar ones to the jury, and the court in this case might have submitted at least some of such questions without committing material error. We cannot say, however, that the court below committed any material error in refusing such questions, or any material error in any other respect; and besides, as we have already stated, we do not think the fourth point of the plaintiff in error has been sufficiently presented to this court. We are not required, without any reference, to hunt critically through a long record to find something upon which to reverse the decision of the trial court.

The judgment of the court below will be affirmed.

All the Justices concurring.